FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HANNAH HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-95 |
| | ) | |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| MIDAS, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I.  MEMORANDUM

Pending before the Court is a Motion to Dismiss filed by Defendants Midas International Corporation, Midas, Inc., and TBC Corporation (collectively, the "TBC Defendants") (**Doc. 30**), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the TBC Defendants' Motion to Dismiss (**Doc. 30**) will be DENIED.

**A. Background**

On January 19, 2017, Plaintiff Hannah Harris ("Plaintiff") filed a Complaint asserting claims of sexual harassment, gender discrimination, and retaliation under Title VII as well as state law tort claims against a number of individuals and entities, including the Lower Burrell Katz Midas store ("the Lower Burrell store"), where she worked as a technician, and the alleged franchisors of that store, the TBC Defendants. On August 10, 2017, the Court granted the TBC Defendants' Motion to Dismiss, finding that Plaintiff did not allege sufficient facts to establish a plausible basis for imposing either joint employer liability or agency liability on the TBC Defendants.

On August 24, 2017, Plaintiff filed an Amended Complaint, attaching the Franchise Agreement between the Lower Burrell store and one of the TBC Defendants, Midas International

1

Corporation ("the Franchise Agreement"). Plaintiff makes allegations related to the TBC Defendants in Paragraphs 32 through 79 of the Amended Complaint. See Doc. 25 ¶¶ 32-79. The Court will address these allegations, when relevant, in its analysis below.

B. **Analysis**

   a. **Plaintiff's Joint Employer Theory of Liability**

Plaintiff attempts to hold the TBC Defendants liable for her claims arising under Title VII based on a theory of joint employer liability. "[A] joint employer relationship may exist for the purposes of Title VII when 'two entities exercise significant control over the same employees.'" Myers v. Garfield & Johnson Enters., Inc., 679 F.Supp.2d 598, 607 (E.D. Pa. 2010) (citing Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997)). District courts within this Circuit consider three factors in determining whether a joint employment relationship exists: (1) the alleged employer's authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) the alleged employer's day-to-day supervision of employees, including employee discipline; and (3) the alleged employer's control of employee records, including payroll, insurance, taxes and the like. Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 494 (W.D. Pa. 2007). No single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two. Id. at 496-97.

As she did in response to Defendants' original Motion to Dismiss, Plaintiff relies heavily on the case Myers v. Garfield & Johnson Enters, 679 F. Supp. 2d 598 (E.D. Pa. 2010), to support her theory of joint employer liability. In Myers, the plaintiff, an employee of a Jackson Hewitt franchise called Garfield & Johnson ("G&J"), alleged that she was sexually harassed, assaulted and threatened by a manager of the franchisee. Id. Applying the factors set out above, the

2

Myers court found that the plaintiff had alleged sufficient facts to establish a joint employment relationship with Jackson Hewitt. Id. at 607-611. For the reasons discussed below, the Court finds—as it did in its August 10, 2017 Memorandum and Order—that Myers is distinguishable from the case at bar. Nevertheless, the Court finds that the Amended Complaint, unlike its previous iteration, alleges sufficient facts to state at least a plausible basis for imposing joint employer liability.

As to the first factor, the Myers court found that the plaintiff pled facts "suggesting that Jackson [Hewitt] has the authority to 'promulgate work rules' and 'set the conditions of employment,'" because the plaintiff alleged she was covered by Jackson Hewitt's sexual harassment and other workplace policies and because Jackson Hewitt had the authority to require G&J managers to submit to training and to obey all applicable laws. Myers, 679 F. Supp. 2d at 609-10. The court also relied on the fact that Jackson Hewitt's Code of Conduct requires franchisees to fire employees in certain circumstances as evidence that Jackson Hewitt maintained significant control over hiring and firing decisions. Id. Here, unlike in Myers, Plaintiff does not allege that the TBC Defendants had control over hiring and firing decisions at the Lower Burrell store. However, Plaintiff does allege that Midas International has the authority to promulgate workplace policies at the store. Specifically, Plaintiff cites language in the Franchise Agreement requiring the franchisee to "at all times comply with all lawful and reasonable policies, regulations and procedures promulgated or prescribed from time to time by Midas in connection with Franchisee's shop or business, including but not limited to . . . supervision and training of personnel." Doc. 25 ¶ 55. Plaintiff further alleges that she was "covered by TBC/Midas' sexual harassment policy," because the TBC Defendants "provided training and guidance to its franchisees, including Katz Midas regarding the creation of an

employee handbook and, more specifically, the inclusion of a sexual harassment policy." Doc. 25 ¶¶ 59-60. Thus, while the allegations in the Amended Complaint do not establish that the TBC Defendants had control over hiring and firing decisions, they are sufficient to establish that the TBC Defendants had the authority (and in fact did) promulgate work rules at the Lower Burrell store.

Regarding the second factor, day-to-day supervision of employees, the Myers court relied on the plaintiff's allegations that Jackson Hewitt reviewed all tax returns prepared by employees prior to filing, assisted employees with problems with tax returns and the computer system, and required that the plaintiff undergo specific training, and monitored the completion of such training. Myers, 679 F. Supp. 2d at 610. Here, Plaintiff does not allege that the TBC Defendants monitored her daily work, or that she ever directly interacted with employees of the TBC Defendants. Thus, as with the first prong, the Court finds this case to be distinguishable from Myers. However, unlike in the original Complaint, Plaintiff does provide some evidence that the TBC Defendants exercised—or at least had the authority to exercise—day-to-day control over employees of the Lower Burrell store. For instance, Plaintiff cites language in the Franchise Agreement providing that Midas International can require employees of the Lower Burrell store (including Plaintiff) to attend trainings. See Doc. 25 ¶ 43 ("From time to time after the opening of Franchisee's shop, Midas may, at its option, provide a training program or programs to Franchisee, and such of his employees as Midas may reasonably designate, and Franchisee agrees to attend and to cause all such designated employees to attend such training program or programs."). In addition, Plaintiff alleges that the TBC Defendants "trained Katz Midas and their designated employees in the 'Midas System' and, in turn, those Katz Midas employees who, upon information and belief, were trained in the 'Midas System,' trained others, including

4

Plaintiff, accordingly." Doc. 25 ¶ 52. Finally, Plaintiff alleges that "representative(s) of TBC/Midas visited and inspected the Lower Burrell Midas location to ensure that it complied with standards and requirements set by TBC/Midas," including, presumably, the requirement that employees adhere to the "Midas system." Doc. 25 ¶ 65. Based on these new allegations, again construed in a light most favorable to Plaintiff, the Court finds that Plaintiff has made at least a weak showing under the second prong.

Finally, with respect to the third factor, the Myers court relied on the plaintiff's allegation that Jackson Hewitt "assumed some degree of control over G&J employee records." Myers, 679 F. Supp. 2d at 610. Plaintiff cites language in the Franchise Agreement stating that Midas International has "the right at all reasonable times, to visit Franchisee's shop for the purpose of . . . . . examining and auditing Franchisee's books and records," and that, "[i]f any of Franchisee's books, records or inventory is located outside the shop premises, Midas shall have similar rights with regard to same." Doc. 25 ¶ 66. Plaintiff argues that this provision is "so broadly written that it provided Midas International with unfettered access to all Lower Burrell Midas records, which included Plaintiff's personnel file and payroll, tax, benefits and insurance information." Doc. 34 at 13-14. Although the Court would read the above provision differently, as applying to financial records rather than personnel files, it agrees that, read in a light most favorable to Plaintiff, such wording is sufficiently broad to support a finding that Midas International exercised some control over employee records at the Lower Burrell store. Drexel v. Union Prescription Centers, Inc., 582 F.2d 781, 788 (3d Cir. 1978) (holding that, in analyzing a motion for summary judgment, a franchise agreement should be considered as a whole and any ambiguities or inferences read in a light most favorable to the plaintiff).

5

In short, although a close call, the Court finds that Plaintiff has alleged sufficient facts to establish a plausible basis for imposing joint employer liability on the TBC Defendants.

**b. Agency and Vicarious Liability**

Plaintiff also argues that the Lower Burrell Defendants acted as agents of the TBC Defendants, and thus are vicariously liable for both the alleged Title VII and state law violations. As the Court held in Myers, although there are no Third Circuit cases directly on point, "courts from other jurisdictions have concluded that an employee may be considered 'employed' by a third party as well as by the nominal employer if the third party has a right to control the employee's conduct, either directly or through the third party's control over the employer." Myers, 679 F. Supp. 2d at 611 (citations omitted). In Pennsylvania," whether the control retained by the franchisor is . . . sufficient to establish a master-servant relationship depends in each case upon the nature and extent of such control as defined in the franchise agreement or by the actual practice of the parties." Drexel, 582 F.2d at 785-786.

Viewed in the light most favorable to Plaintiff, the Court finds that the Amended Complaint contains sufficient allegations to state a plausible basis for imposing vicarious liability on the TBC Defendants. Here, as in Drexel, there are "provisions of the [Franchise Agreement] . . . so nebulously and generally phrased as to suggest that [the franchisor] retained a broad discretionary power to impose upon the franchisee virtually any control, restriction, or regulation it deemed appropriate or warranted." Doc. 25 ¶¶ 55-56; Drexel, 582 F.2d at 788-89. Furthermore, as in Myers, Plaintiff alleges that the TBC Defendants required Lower Burrell store employees to submit to training and provided guidance regarding its discrimination policies. Doc. 25 ¶¶ 43, 52, 59-60; Myers, 679 F. Supp. 2d at 612 (finding sufficient allegations of an agency relationship where, among other things, "Jackson Hewitt required that G & J and its

6

employees submit to training by Jackson Hewitt" and "published apparently mandatory codes of conduct that included policies on diversity and non-discrimination"). Thus, the Court finds that the Amended Complaint contains sufficient allegations of the TBC Defendants' control over the Lower Burrell store's employees to state a plausible basis for imposing agency/vicarious liability.

### c. Liability of Non-Signatory TBC Defendants

Defendants argue that, even if the Court finds that Midas International Corporation, a signatory to the Franchise Agreement, can be held liable under a joint employer or agency theory of liability, TBC Corporation and Midas, Inc. should be dismissed, as these entities are not signatories to that agreement. Doc. 31 at 16. However, as discussed above, Plaintiff makes numerous allegations related to TBC Corporation and Midas, Inc., including that Midas, Inc. and TBC Corporation "possessed authority to require Katz Midas employees to attend training programs, adhere to the Midas System and assist with the operation and management of the Lower Burrell Midas," Doc. 25 ¶ 47; "provides training to Katz Midas executives and upper management regarding the way to operate its locations, which includes training in employee relations, compliance with anti-discrimination statutes, handling complaints of discrimination, harassment and retaliation, and setting store policies," id. ¶ 49; "trained Katz Midas and their designated employees in the 'Midas System' and, in turn, those Katz Midas employees who, upon information and belief, were trained in the 'Midas System,' trained others, including Plaintiff," id. ¶ 52; and "provided training and guidance to its franchisees, including Katz Midas regarding the creation of an employee handbook and, more specifically, the inclusion of a sexual harassment policy," id. ¶ 59. Of course, these allegations may ultimately be disproved during the course of discovery. However, at this stage in the proceedings, the Court must credit these

plausible allegations in analyzing the parties' exposure to liability.  See Anderson v. Finley Catering Co., 218 F. Supp. 3d 417, 422–23 (E.D. Pa. 2016) (stating that "'the precise contours of an employment relationship can only be established by a careful factual inquiry' and, thus, discovery is often necessary before a plaintiff can reliably define the contours of the employment relationship.") (citation omitted).

## II.    ORDER

For the reasons stated above, the TBC Defendants' Motion to Dismiss (**Doc. 30**) is DENIED.  An Order setting an initial Case Management Conference will follow.


IT IS SO ORDERED.


November 8, 2017                                                         s/Cathy Bissoon
                                                                         Cathy Bissoon
                                                                         United States District Judge

CC (via ECF email notification):

All Counsel of Record