IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HANNAH HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-95 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| MIDAS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER ON PRETRIAL MOTIONS

Pending before the Court are several pretrial motions filed by Plaintiff Hannah Harris ("Harris") and Defendants 413 Lower Burrell Auto Center, Ltd.; Auto Systems Center, Ltd.; Trent Kight; Max Auto Supply Company; Midas Auto & Tire Experts; Midas Auto Service Experts ; and Ken Shick[1] (collectively "Defendants"[2]), and their respective Responses.[3]  For the reasons below, the Court resolves these motions as follows:

- Defendants' Motion in Limine to Exclude the Contents of an Illegal Audio Recording (Doc. 91) is DENIED.

- Defendants' Motion in Limine to Preclude "Admission" Testimony of Anthony DiGuilio (Doc. 93) is GRANTED.

- Defendants' Motion in Limine to Exclude Plaintiff's Proposed Expert, Susan Strauss (Doc. 95) is GRANTED.

- Defendants' Motion in Limine to Bifurcate Trial Pursuant to F.R.C.P. 42(b) (Doc. 97) is DENIED.

---

[1] With the exception of the Motion to Preclude Tort Claims, (Doc. 99), which addresses Counts that are not brought against Trent Kight, each of these Motions was filed on behalf of all Defendants.
[2] The term "Katz Defendants" will be used when referencing all defendants except Trent Kight ("Mr. Kight") and Ken Shick ("Mr. Shick").
[3] References to the parties' respective arguments throughout refer to their briefs supporting or opposing each motion.

- Defendants' Motion in Limine to Preclude Tort Claims (Doc. 99) is DENIED.

- Plaintiff's Motion in Limine to Exclude Irrelevant and Unfairly Prejudicial Evidence Pursuant to Federal Rules of Evidence 401, 402, 403, and 404 (Doc. 101) is GRANTED in part and DENIED in part.

- Plaintiff's Motion in Limine to Exclude the Testimony of Michael E. Thase, M.D. (Doc. 103) is GRANTED in part and DENIED in part.

## ANALYSIS

1. Defendants' motion in limine to exclude the contents of an illegal audio recording (Doc. 91) is denied.

Defendants move to exclude an audio recording made by Plaintiff of an interaction she had with Defendant Ken Shick on the afternoon of July 9, 2016. It is not in dispute that the recording was made without Mr. Shick's consent. In support of their motion, Defendants first argue that Plaintiff violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Wiretap Act") by making the recording, and because it is "an illegal audio recording" it cannot be admitted in this federal action.

In her Response, Plaintiff argues that "Defendants' lengthy analysis of the Pennsylvania Wiretap Act is irrelevant" because federal law controls the admissibility of evidence in this case. Irrespective of whether the Plaintiff violated Pennsylvania law in making the recording, under the Federal Rules of Evidence, Plaintiff contends the tape is admissible. Furthermore, Plaintiff avers that no violation of the Wiretap Act occurred, as Mr. Shick has no reasonable expectation of privacy in the recorded conversation and she had a reasonable expectation that Mr. Shick was about to commit a crime of violence.

Defendants filed a Reply, which switches gears and argues the Supreme Court's analysis in Erie Railroad Co. v. Tompkins controls the audio recording's admissibility. 304 U.S. 64, 79 (1938). Under Erie and its progeny, when a district court exercises diversity or supplemental

2

jurisdiction, it must apply federal procedural law and state substantive law to those claims. Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008). Defendants argue that the Wiretap Act is state substantive law that must control the admissibility of the audio recording, and therefore, it must be excluded. Defendants dedicate the remainder of their Reply to distinguishing the authority cited by Plaintiff that would allow admission of the recording, arguing that Mr. Shick had an expectation of privacy that entitled him to protections of the Wiretap Act, and restating their position that the recording is not admissible for any purpose, including impeachment.

The Court has given careful consideration to all the briefing on this issue, and finds that the Defendants' motion to exclude must be denied. The limited authority on this issue in the civil cases, admission of illegal recordings in the criminal context, and federalism concerns compel this result. Each of these points will be addressed in turn.

First, the federal authorities provided by the parties and located independently by the Court favor admitting the audio recording. In their initial briefing, Defendants offered Pennsylvania state cases discussing the Wiretap Act, but only a single federal case in support of their position that the tape is inadmissible, Martinez v. City of Reading Property Management Division. 2018 WL 1290087 (E.D. Pa. Mar. 13, 2018). In Martinez, the district court declined to admit recordings obtained without consent of persons who were not parties because "this evidence constitutes inadmissible hearsay in this case." Id. at *12. Here, Mr. Shick is a named Defendant, and thus his statements on the tape are not hearsay. Rule 801(d)(2)(A). Martinez is inapposite.

In contrast, Plaintiff cites to federal cases in support of her contention that the audio recording is admissible, even if it would be barred in a state court. See Collins v. Jones, 2015 WL 790055, at *2 n.6 (E.D. Pa. Feb. 24, 2015); Wilson v. N. Am. Reinsurance Corp., 1988 WL

48561, at *2 (E.D. Pa. May 13, 1988). In both cases, a party objected to the admission of an audio recording because it was made in a state where two-party consent was required. In each case, the federal court found that the Federal Rules of Evidence—not state law—governed admissibility, and the recordings were admitted. Federal courts in this Circuit have found the same when exercising diversity jurisdiction. See, e.g., Montone v. Radio Shack, 698 F. Supp. 92, 95–96 (E.D. Pa. 1988); Tarnoff v. Wellington Fin. Corp., 696 F. Supp. 151, 152–53 (E.D. Pa. 1988). While this authority is not binding, the Court nonetheless finds the reasoning in these cases to be persuasive, particularly given the absence of any federal authority to the contrary.

Second, there is substantial and controlling authority that would compel admission of the audio recording in a federal criminal trial. For example, in United States v. Williams, the Court of Appeals for the Third Circuit analyzed whether "the suppression remedy provided by state law is directly applicable . . . in a federal case." 124 F.3d 411, 426 (3d Cir. 1997) (Alito, J.). There, the defendants argued that evidence consisting of audio recordings obtained and played for a grand jury in violation of the Wiretap Act were illegally obtained and must be suppressed. Id. at 425. The Third Circuit rejected defendants' argument because generally the Federal Rules of Evidence govern such questions and the relevant Pennsylvania statutory provision requiring exclusion "does not purport to govern federal cases." Id. at 428; see also United States v. Charles, 213 F.3d 10, 19 (1st Cir. 2000) (admitting audio recordings in federal prosecution instituted after suppression of the same recordings in an earlier state proceeding due to violation of state wiretap act because evidence "'obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings *without regard to state law*.'"(quoting United States v. Sutherland, 929 F.2d 765, 769 (1st Cir. 1991))).

Third, Defendants' Erie-based objections suffers from several defects. Defendants argue that because there are state-law claims over which this Court is exercising supplemental jurisdiction, the Wiretap Act is substantive law that must be applied to preclude the tape in all respects. The audio recording, however, is relevant evidence to all of Plaintiff's claims—not just her state-law claims—and certainly the Federal Rules of Evidence govern the admissibility of evidence when a federal district court is hearing claims over which it has federal question jurisdiction. See Collins, 2015 WL 790055, at *2 n.6 (federal law governs the admissibility in federal question cases).

More to the point, it is not clear that the Erie doctrine applies to the Federal Rules of Evidence at all. Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 878–79 (10th Cir. 2006). In Sims, the district court had excluded evidence showing the plaintiff was not wearing his seat belt while in a fatal car crash in light of a state law precluding the introduction of such evidence in a state court proceeding. Id. at 877. The district court reasoned, because it was sitting in diversity, that it had to apply the Erie doctrine and bar the evidence. Id. at 884. The Court of Appeals for the Tenth Circuit reversed, holding that "the Federal Rules of Evidence are not governed by the Erie doctrine." Id. at 886. However, it did not hold that federalism principles play no role in considering the relationship between state law and the admission of evidence. Rather, the Sims court counseled courts to look to the purpose of the state law and examine whether the law was designed to apply to the type of facts in the federal case. See id. at 884–85.

Applying Sims, Plaintiff's recording is admissible. First, just as in Sims where the exclusion applied to a different type of action than the one before the court, the exclusionary principle at issue here does not purport to apply to in the federal courts. 18 Pa. C.S. § 5721.1 (prohibiting disclosure in "any court. . . of this Commonwealth"); see also Williams, 124 F.3d at

5

428. Second, and more importantly, Pennsylvania has made its own judgment that the remedy for this transgression should be had through the criminal law—not the exclusion of evidence. See 18 Pa. C.S. § 5703 (codifying that is a felony to intercept communications without consent). Pennsylvania remains free to pursue such a prosecution if it wishes to do so, and the Court's decision on whether to admit Plaintiff's audio recording has no bearing on that decision. That no such prosecution, let alone a conviction, occurred here strengthens the Court's conclusion that it cannot be Pennsylvania's intent to require this Court to hold a trial on whether or not Plaintiff violated the Wiretap Act in order to rule on the admissibility of the recording.[4] The substance of Pennsylvania's law would be muddled by such procedure.

Other district courts in this Circuit have come to the same conclusion regarding Pennsylvania's policy concerns. See Montone, 698 F. Supp. at 93 n.1 ("I am not persuaded that the failure to observe the Pennsylvania wiretap statute's exclusionary provisions in a federal diversity proceeding will undermine the substantive policy underlying the statute, particularly in light of the remedies the statute itself provides for victims or unlawful wiretaps."); Tarnoff, 696 F. Supp. at 152 ("The policy underlying the Pennsylvania anti-wiretapping statute can be vindicated by a criminal prosecution, if appropriate."). Because the substantive concerns of Pennsylvania's Wiretap Act are not infringed upon by the admission of Plaintiff's recording under the Federal Rules of Evidence, Defendants' motion to exclude is denied.

---

[4] Pennsylvania law provides for a civil action that any on the Defendants could have, and maybe should have brought under Rule 13, for the alleged unlawful interception by Plaintiff. See 18 Pa. C.S. § 5725.

2. Defendants' motion in limine to preclude "admission" testimony of Anthony DiGuilio (Doc. 93) is granted.

Defendants argue that a statement Plaintiff's co-worker, Anthony DiGuilio, ("Mr. DiGuilio"), made during his deposition that a "manager" told him Mr. Shick had grabbed Plaintiff by the neck is inadmissible hearsay. Defendants contend that there is no applicable exception to the rule again hearsay, and in particular, that Federal Rule of Evidence ("Rule") 801(d)(2)(D) cannot apply because Plaintiff cannot identify the declarant.

Plaintiff responds that because the "role" of the declarant is known, there is no need to identify the specific manager for admission under Rule 801(d)(2)(D). Further, because the time period can be narrowed and a small number of persons could have been that "manager," the declarant "should easily be identifiable."

Plaintiff can't have it both ways. If discerning the identity of the declarant is relatively simple, then Plaintiff should have identified the declarant during discovery. Without the identity of the declarant, there is ample support for Defendants' position that, it is not possible to discern whether the statement made was "on a matter within the scope of that [employee's] relationship and while it existed" as required by Rule 801(d)(2)(D). Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1002–04 (3d Cir. 1988) (statement made by unidentified "they" in the workplace does not meet evidentiary requirements for admission under Rule 801(d)(2)(D)); United States v. Cruz, 910 F.2d 1072, 1081 n.10 (3d Cir. 1990) (explaining that in Carden, without identity of declarant, indicia of reliability embodied in Rule 801(d)(2)(D) were absent and "statement had to be excluded."); see also Zaken v. Boerer, 964 F.2d 1319, 1323–24 (2d Cir. 1992) ("Without identification of declarant, the statement . . . did not have a sufficient evidentiary foundation" for admission under Rule 801(d)(2)(D)."). Thus, Mr. DiGuilio may not testify that a "manager" told

7

him Ken Shick grabbed Plaintiff by the neck. If the manager is identified, the Court will allow Plaintiff to revisit this issue.

> 3. Defendants' motion in limine to exclude Plaintiff's proposed expert, Susan Strauss, (Doc. 95) is granted.

Rule 702 provides that a qualified expert witness may testify to the extent that (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."

Defendants move to exclude the testimony of Plaintiff's expert, Susan Strauss, ("Dr. Strauss") who Plaintiff has represented would be called as a rebuttal witness "to rebut any suggestion that [Defendants] made a good-faith effort to comply with the law." Defendants argue that Dr. Strauss's methods are unreliable, unhelpful to the jury, and that her opinions invade the province of the jury. Plaintiff responds that Dr. Strauss's testimony pertaining "standard practices" and to specific issues such as Defendants' "failure to actually implement the sexual harassment policy in its Employee Manual" are relevant and will assist the jury in understanding the facts.

The Court need ask no more than whether Dr. Strauss's testimony will help the jury to understand the evidence or to determine a fact in issue to decide Defendants' motion. It will not. If Defendants present evidence that "they made a good-faith effort to comply with the law," it is the duty of the jury alone to assess their proffered effort and decide if they were sufficient under the law. As the undersigned found in <u>Knox v. PPG Industries, Inc.</u>:

> While Plaintiff may present evidence of whether Defendant departed from its internal policies, or its normal mode of operation, when investigating and terminating Plaintiff, these matters are not so complicated as to go beyond a

> jury's independent comprehension. The juror's common knowledge and
> qualifications prepare them to make a determination here as to whether
> Defendant conducted a flawed investigation and whether such flaws support an
> inference of discrimination.

(No. 15-1434, Doc. 88 at 2.) Ultimately, the Court finds that the issues upon which Dr. Strauss opines are not conducive to expert testimony. The jury will hear the evidence and the Court will instruct the jury on the proper legal standard to apply when assessing such evidence. As Dr. Strauss's testimony is of little help to the jury in understanding the facts and cannot assist with the legal standard, Defendants' motion is granted and Dr. Strauss's testimony is precluded.

4. Defendants' motion in limine to bifurcate trial pursuant to F.R.C.P. 42(b) (Doc. 97) is denied.

Defendants argue trial should be bifurcated because Plaintiff's evidence and testimony related to punitive damages will confuse the jury and prejudice Defendants. Plaintiff responds that evidence regarding compensatory and punitive damages will overlap, as many of the facts relevant to liability overlap with those supporting an award of punitive damages. Thus, Plaintiff states, bifurcation would be inefficient, and jury instructions can address Defendants' concerns about unfair prejudice.

As Defendants correctly point out, the decision to bifurcate any portion of the trial lies in the sole discretion of the trial judge. Defendants have given the Court no reason to think that the jury would be categorically unable to consider evidence related to the financial status of the corporate defendants, or any other evidence in support of her punitive damages claim, for a limited purpose if instructed to do so. See In re Bayside Prison Litigation, 157 F. App'x 545, 548–49 (3d Cir. 2005). As any risk of prejudice or confusion as to this evidence can be addressed through the Court's instructions to the jury, Defendants' Motion to Bifurcate is denied.

5. Defendants' motion in limine to preclude tort claims (Doc. 99) is denied.

Defendants' argue that Count V (assault and battery), Count VI (intentional infliction of emotional distress), and Count VII (intrusion upon seclusion), all three of which are brought against the Katz Defendants and Mr. Shick, should be "dismissed" as to the Katz Defendants because they are barred by the Pennsylvania Worker's Compensation Act ("PWCA"). Plaintiff responds that the PWCA does not bar the torts, or, at a minimum, whether the claims are barred should be decided by the factfinder.

Up front, the Court agrees with Plaintiff that Defendants have filed "a motion for summary judgment, disguised as a motion in limine," (Doc. 110 at 1), and the Court does not take to it kindly. Emcore Corp. v. Optium Corp., 2009 WL 3381809, at *1–2 (W.D. Pa. Oct. 16, 2009). The deadline for summary judgment motions was over a year ago, (Doc. 63), and Defendants' arguments are thus untimely. The Court would be justified in denying Defendants' motion outright for that reason alone. Nox Medical Ehf v. Natus Neurology, Inc., 2018 WL 6629704, at *1 (D. Del. Apr. 12, 2018) ("I agree with Plaintiff that this motion in limine is really an untimely summary judgment motion. It is therefore DENIED."); see also U.S. Bank, Nat'l Ass'n v. Rosenberg, 180 F. Supp. 3d 347, 351–52 (E.D. Pa. 2014) ("[Plaintiff's] claim is an untimely request for partial summary judgment that cannot be raised in a motion in limine.").

Nonetheless, the substance of Defendants' motion will be address in order to put to bed the flawed premise upon which it rests. Defendants argue, as they did at the motion to dismiss stage, that Plaintiff's injuries cannot be "disconnected from her work at Lower Burrell" and therefore are pre-empted by the PWCA. They also argue that because Mr. Shick gave Plaintiff vacation days, smoked cigarettes with her, and did not officially discipline her—essentially

10

because he was nice at times—he did not harbor the "personal animus" against Plaintiff required to except her injuries from his alleged conduct from PWCA coverage.

Defendants' repeated emphasis that the alleged conduct in this case took place at work—and therefore cannot be disconnected from work—misses the point entirely. The inquiry is whether the injuries are the type that *should* happen at work and whether they occur *because of* work-related reasons. Pennsylvania courts agree that injuries from physical assaults and severe emotional distress from extreme harassment should not occur in a professional work environment and that they occur for reasons unrelated to the fact that participants are physically in a work space. See Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997), *aff'd*, 691 A.2d 476 (Pa. 1996) ("[The PWCA] will not bar an action for intentional infliction of emotional distress where the injury to the employee arose from harassment which was personal in nature and not part of the proper employer-employee relationship."); see also Schweitzer v. Rockwell Int'l., 586 A.2d 383, 391 (Pa. Super. Ct. 1990) (same); Mike v. Borough of Aliquippa, 421 A.2d 251, 254 (Pa. Super. Ct. 1980) (employee's injuries from workplace assault committed for reasons "purely personal" as opposed to those directed at employee because he is "an employee or because of his employment").

Plaintiff cites to several district courts that have held, based on this Pennsylvania authority, that conduct indistinguishable from what has been alleged in this case should be presented to a jury. See, e.g., Jackson v. Lehigh Valley Physicians Grp., 2009 WL 229756, at *8–9 (E.D. Pa. Jan. 30, 1999) (tort claim based on physical assault not barred by PWCA); Brooks v. Mendoza, 2002 WL 467157, at *4 (E.D. Pa. Mar. 26, 2002) (PWCA does not preempt claim where manager's harassment consisted of "taunting plaintiff with a vibrating object in his pants, pursuing plaintiff around the restaurant despite her protests, and uttering obscene

remarks); Merritt v. Delaware River Port Auth., 1999 WL 285900, at *8 (E.D. Pa. Apr. 20, 1999) (denying summary judgment motion and allowing multiple tort claims to proceed over preemption objection where plaintiff reported egregious physical harassment and supervisors reacted by asking plaintiff to keep quiet about it). In at least one case, the Third Circuit has affirmed employer liability for intentional infliction of emotional distress where the district court found an employer, through its supervisors, not only allowed an "ongoing and extreme hostile work environment to continue to exist, it actually encouraged it." Hare v. H&R Indus., Inc., 67 F. App'x 114, 120–21 (3d Cir. 2003).

This Court does not believe, despite Defendants continued insistence, that this a case of "ordinary" sexual harassment.[5] See Durham Life Ins. Co. v. Evans, 166 F.3d 139, 160 n.16 (3d Cir. 1999) (when sexual harassment is "like other workplace hazards" it is likely preempted by the PWCA, but in situations where, for example, "a supervisor sexually assaulted an employee" claims may not be preempted). Plaintiff's allegations, and evidence produced in discovery, reveal conduct entirely different in kind, and therefore well outside of the reach of the PWCA. The jury will decide the liability of the Katz Defendants and Mr. Shick as to Plaintiff's intentional tort claims.

6. Plaintiff's motion in limine to exclude irrelevant and unfairly prejudicial evidence pursuant to Federal Rules of Evidence 401, 402, 403, and 404 (Doc. 101) is granted in part and denied in part.

Plaintiff identifies evidence on several subjects which she believes is irrelevant or unfairly prejudicial.

---

[5] Further, this Court, like others, questions whether even "ordinary" sexual harassment is ever properly characterized as being related to work. E.g., Gruver v. Ezon Products, Inc., 763 F.Supp. 772, 776 (M.D. Pa. 1991) ("This court, like the *Schweitzer* court, believes that harassment of a sexual nature in the workplace has nothing to do with work, but rather stems from reasons personal to the party foisting his attentions on a co-worker.").

*a. Irrelevant evidence*

Plaintiff argues that evidence in the following areas is irrelevant to any fact of consequence in the action, and therefore should be excluded:

(1) Mr. Shick's health conditions generally and his leukemia diagnosis specifically;

(2) Mr. Shick's living situation and that he was raised by a single mother;

(3) Mr. Shick's training of sailors during his military service;

(4) Plaintiff's brother's gender identity; and

(5) the Facebook messages exchanged by Plaintiff and Brittany Stantoine, (Doc. 102-7).

As explained below, the Court finds that this evidence is, with limited exception, irrelevant to the facts of consequence in this case, and therefore inadmissible under Rule 401 and 402. In circumstances in which it has arguable relevance, the Court believes there is ample other evidence which is more probative and less unfairly prejudicial.

On the first point, Plaintiff argues that Defendants seek to introduce this evidence to garner inappropriate sympathy for Mr. Shick. Defendants respond that Mr. Shick's health is relevant because Ms. Harris intends to testify that he slept on the job, because he may fall asleep at trial, and because Ms. Harris had concerns about his health that are relevant to this case. The Court is constrained to agree with Plaintiff. Mr. Shick's health conditions do not make it more or less likely that he engaged in the conduct that is the subject of this case, and therefore are irrelevant. His deposition testimony indicates that he has some exertional limitations as a result of his health conditions, and no mental deficits, including none related to his memory. Plaintiff's admission that she was "a little" concerned when she believed Mr. Shick might die after being taken away in an ambulance is an appropriate human response, and has no relevance to whether

13

she was subjectively offended by the alleged sexual, physical, and emotional harassment and assaults at issue.

The single exception to the Court's ruling is that Defendants may introduce limited evidence related to Mr. Shick's health if Plaintiff indicates that he slept on the job. Such evidence must concern only the health conditions that were present at the time, and address specifically how they might cause him to fall asleep while working. Unless and until Plaintiff introduces such evidence, Defendants may not allude to any of Mr. Shick's health conditions.

Second, the fact that Mr. Shick was raised by a single mother is not relevant, nor is the fact that he lives with another person, regardless of who that person may be. The Court does not agree that because Mr. Shick, as Defendants argue, "understood the difficulties faced by a single mother" he was more likely to accommodate Plaintiff because she was a single mother. Just the opposite could be true: he could have used his understanding to threaten Plaintiff more effectively. At best, the fact that Mr. Shick was raised by a single mother is a distraction, and therefore Defendants are precluded from introducing evidence on these points.

On this third point—Mr. Shick's military service—the Court again agrees with Plaintiff. Defendants argue that Mr. Shick would be "unable to explain" why he told Plaintiff to follow a "chain of command" if he could not also explain that he "is a former marine [sic] and taught the enlisted men and woman [sic] of the U.S.S. Nimitz how to build bombs." The "chain of command" is a concept familiar to persons outside of the military, and non-military persons understand that companies have a reporting structure that is important. More importantly, the relevant reporting structure in this case is one in place at the Lower Burrell store regarding sexual harassment, not one that Mr. Shick's learned about in his role as a United States Marine. Thus, evidence on this point is irrelevant and inadmissible.

Next, any evidence related to Plaintiff's brother's gender identity is excluded. The Court disagrees with Defendant and fails to see how Plaintiff's comments about "personal, sexual matters" at work, including sex acts other persons wanted to or did perform with her, relate to the fact that Plaintiff's brother is transgender. Discussions of sex and sex acts are different in kind from discussions of gender and gender identity. That Plaintiff discussed her brother's gender identity at work—no matter how she discussed it—has no bearing on whether she experienced what is alleged in the Amended Complaint. Preclusion of this evidence does not prohibit, as Defendants appear to argue, admission of other "crude, tasteless, or vulgar" language related to sex and sex acts that Plaintiff or others may have used in the workplace. The Court believes this other evidence is more probative on the degree and type of language present at the Lower Burrell store while Plaintiff worked there and that it does not carry the same risk of undue prejudice.

Fifth and finally, the Court rejects Defendants' contention that Plaintiff's Facebook messages with former assistant manager have any relevance to what Plaintiff may or may not consider to be hostile in a work environment. Taken to its extreme, Defendants' argument suggests that anything a plaintiff might tolerate or participate in in her private life bears on what a plaintiff would tolerate or participate in at work. That assertion is, simply put, absurd. Defendants are precluded from introducing the Facebook messages.

b. *Irrelevant and prejudicial evidence*

Plaintiff also argues that evidence in the following areas should be excluded: (1) her work history; (2) the names/types of drugs she used prior to 2014; and (3) her criminal history.

First, Plaintiff seeks to exclude evidence related to her job history, arguing that such evidence is irrelevant as she does not seek lost wages or damages for a reduction in earning capacity. Plaintiff's Pretrial Statement makes clear she seeks damages in the following areas,

among others: (a) past-medical expenses; (b) future medical expenses; (c) compensatory damages for pain, suffering, and mental anguish; and (d) punitive damages. (Doc. 88 at 10–11.) She also states that such evidence is unfairly prejudicial and would be confusing to the jury.

Defendants respond that the evidence is relevant to the issues of whether she was constructively discharged and to the issue of compensatory damages. Defendant urges that:

> It is certainly relevant for Defendants to show that Harris was unable to stay at a job **before** working at Lower Burrell, just as she is unable to stay at a job **after** working for Lower Burrell, making it more probable that her problem with staying at a job for any length of time are because of her past psychiatric problems, and have nothing whatsoever to do with Lower Burrell.

(Doc. 109 at 13.)

After considering both arguments, the Court agrees with Plaintiff that this evidence is mostly irrelevant. However, there is some merit to Defendants' point that one of Plaintiff's experts, Liza H. Gold, MD, DFAPA, ("Dr. Gold"), relies on Plaintiff's work history and experiences in opining on her overall psychological well-being. (See Doc. 88-1 at 6–9.) Specifically, Dr. Gold contends that Plaintiff's psychological condition was improved at the time she began working at the Lower Burrell store, and points to Plaintiff's "commitment to pursue a career" as evidence of this improvement. (Id. at 9.) Dr. Gold also points to the steps Plaintiff took in pursuing a career in automotive repair as an indicator of her "personal and financial stability." Defendants are entitled to explore these facts when cross-examining Dr. Gold at trial, including by contesting whether there were psychologically meaningful changes in Plaintiff's work history in the period of time immediately before and after she worked at the Lower Burrell store. Cf. Rule 805 (requiring expert disclosure of facts and data upon cross-examination).[6]

---

[6] To the extent that other expert testimony is elicited on this issue, this evidence may also be introduced on cross-examination.

However, in recognition of the limited relevance of Plaintiff's job history, and to guard against the danger of undue prejudice to her, the Court will confine this exploration of Plaintiff's work history to the years 2012 to the present. For each job Plaintiff has held, the parties may introduce evidence related to the place she was employed, the approximate dates of employment, and the position in which she was employed. The reason the job ended may be characterized as either that Plaintiff was terminated or Plaintiff voluntarily left the position, as is factually appropriate. As such, the Court will not allow display of the "Harris Known Work History" chart to the jury in its present form, but will consider allowing a different demonstrative at trial, consistent with the above. Defendants are cautioned not to stray from these boundaries during trial.[7]

Second, Plaintiff argues that Defendants should be precluded from naming or otherwise identify the drugs she experimented with or used prior to 2014. The Court agrees with Plaintiff that this evidence is irrelevant, and therefore inadmissible. Further, even if the Court credits Defendants' argument that Plaintiff's drug use prior to 2014 is relevant, the danger of unfair prejudice to Plaintiff substantially outweighs any arguably probative value of such evidence to the critical issues in this case.

Third and finally, Plaintiff states evidence related to the citations she received for traffic violations, damage to a mailbox, and disorderly conduct[8] should not be admitted, because

---

[7] Defendants are precluded from introducing the evidence outlined in their Response under the heading "Evidence regarding her Pre and Post Employment Jobs is Relevant." (Doc. 109 at 14–16.) This evidence is not relevant, as it does not relate to the harm caused by Defendants, Plaintiff's psychological well-being, any other fact of consequence in this case.

[8] The Court agrees with Plaintiff's contention in her Motion that the magisterial docket sheet reflects she was not guilty of retail theft charged in 2013, though she testified in her deposition that she was guilty. Thus, Defendants' position that this must be admitted as a conviction of crimen falsi is rejected. The Court finds that the introduction of evidence related to this charge

Defendants seek to introduce it for an improper purpose as outlined in Rule 404(b). She also argues that the evidence is not admissible under Rule 609, and is, on the whole, irrelevant and unfairly prejudicial. Defendants respond briefly to Plaintiff's contentions, stating that such evidence rebuts the opinion that Plaintiff was stable in 2015 and shows that she has issues with drug use.

Again, the Court agrees with Plaintiff. It is hard to conceive of a permissible use of such evidence, or to credit Defendants' argument on this point. Evidence related to Plaintiff's criminal history is precluded.

7. Plaintiff's motion in limine to exclude the testimony of Michael E. Thase, M.D. (Doc. 103) is granted in part and denied in part.

In deciding whether to admit the testimony of Michael E. Thase, M.D., ("Dr. Thase"), "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 595 (1993). The Court must be careful not to disqualify an opinion for a potential methodological flaw, instead recognizing that there could be good grounds for the opinion despite the flaw. Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 83 (3d Cir. 2017).

Plaintiff argues that Dr. Thase's testimony should be precluded in its entirety, as his testimony would be duplicative in part because he agrees with Dr. Gold, and because his opinions are couched in terms designed deliberately to confuse the jury and to include improper assessments regarding Plaintiff's credibility. Plaintiff also argues that Dr. Thase deviated from standard practices because he did not himself interview Plaintiff prior to crafting his opinion.

---

and Plaintiff's deposition testimony would confuse the jury and be unfairly prejudicial, and thus will exclude it pursuant to Rule 403.

In response, Defendants state that Dr. Thase is being offered as a psychiatric expert in the area of mood disorders, and that his opinions permissibly focus on Plaintiff's "psychiatric diagnoses, and the impact, if any, of events occurring in her life (including alleged events at Lower Burrell Midas) on those diagnoses."

The Court agrees with Defendant that that is the proper scope of Mr. Thase's testimony, and finds that it is substantially the same as the subject Plaintiff argues it is permissible for Dr. Thase to opine on: "[T]he issue is whether Hannah Harris suffered harm, such as emotional distress as a result of the allegedly unlawful conduct at issue in this case." Both Dr. Gold and Dr. Thase have authored opinions about the emotional distress or psychological harm Plaintiff suffered as a result of the events she alleges occurred while she was working and how her psychiatric conditions and history relate or contribute to that harm. They may also offer those opinions to the jury at trial.

As to Plaintiff's objection that Dr. Thase's decision not to interview Plaintiff should preclude his testimony, the Court agrees with Defendants that this goes too far. Plaintiff's own expert, Dr. Gold, indicated that it was not a professional requirement that Dr. Thase personally interview Plaintiff prior to rendering his opinion, though a failure to do so may place limitations on a report.[9] Of course, Plaintiff may challenge Dr. Thase's conclusions in light of his decision not to interview her, but the Court finds that ultimately it is for the jury to take that decision into account in weighing his opinion, not for the Court to bar his opinion altogether.

Thus, Dr. Thase and has "good grounds" for the majority of his opinions, numbered 1 through 17 on pages 4 to 7 of his report. However, in light of the Court's rulings on other

---

[9] While Dr. Gold is a forensic psychiatrist, Dr. Thase is not. Their respective reports are limited in different ways due to their different areas of expertise.

motions, Dr. Thase's opinions will be restricted to some degree. The restrictions regarding Plaintiff's job history, as discussed in above at Section 6.b., apply to Dr. Thase's testimony at trial. He may reference Plaintiff's job history as an indicator of her overall well-being and psychological stability, including, for example, his opinion that her work history "reveals a pattern of continued workplace difficulties and relatively frequent job changes that is unchanged." The place Plaintiff was employed, the approximate dates of employment, and job title, along with the reason she left the position may be indicated. Any opinions Dr. Thase may have regarding lost wages or earning capacity is not relevant and is excluded, such as, for example, his opinion that there are no signs of "reduction in earning capacity."

Regarding Dr. Thase's opinion, in the conclusion of his report, as to whether Plaintiff suffered an "injury" or a "debilitating injury," the Court finds that this portion of Dr. Thase's opinion risks confusing the jury as to the legal standard that applies to her claims. Defendants are cautioned to confine Dr. Thase's testimony to the scope identified by the Court above, namely the harm and distress she suffered, if any, as a result of the events alleged.

Finally, Dr. Thase may give his opinions about the records that he has reviewed, including all statements and information contained in Plaintiff's medical records. Defendants are correct that "Dr. Thase is permitted to consider the contents of the records, just as Dr. Gold is permitted to do so." Experts may consider and opine about the "pathological liar" statement made by Plaintiff, and the jury will decide its importance.

IT IS SO ORDERED.

October 18, 2019  s/Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):
All Counsel of Record